IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | | |
|---|---|---|
| PIERRE WATSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No: 4:15-CV-01241-JCH |
| | ) | |
| UNKNOWN MOORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT ERICA CRISS' MEMORANDUM IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT
FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

COMES NOW Defendant Erica Criss, by and through her attorneys Wiedner & McAuliffe, and for her Memorandum in Support of her Motion for Summary Judgment for Failure to Exhaust Administrative Remedies, states as follows:

**Introduction**

Pierre Watson is an inmate previously residing at St. Louis County Jail, located in the Clayton, Missouri, Justice Center. Plaintiff claims he received improper treatment for a rash while incarcerated therein. [Docs. 1, 15, 77]. Specifically, he alleged that Erica Criss was deliberately indifferent to his serious medical needs by failing to properly diagnose his skin infection, and by delaying treatment for the medication she did prescribe. [Doc. 77, p. 13, ¶ 91-93].

Plaintiff has not exhausted his administrative remedies prior to the filing of this suit as they relate to Defendant Criss. Plaintiff filed one grievance, but this

1

grievance does not identify Nurse Criss or any action or inaction attributed to her. The sole grievance complains only of actions taken by other parties to this suit.

### Statement of Uncontroverted Material Facts

1. Plaintiff filed his suit on August 13, 2015. [Doc. 1]. Plaintiff filed suit against a number of defendants, including "Nurse Practitioner Erica Unknown." Plaintiff outlines the care he received from Erica Criss, but does not state how her behavior in any way violated his constitutional rights.

2. Plaintiff amended his Complaint on February 18, 2016. [Doc. 15]. Therein, he claims that Erica Criss misdiagnosed his skin rash as scabies (without any identification of what he alleges is the proper diagnosis) and provided improper medication for it, and then that he had to wait eleven days for his medication after seeing Nurse Criss. He then goes on to state claims against other Defendants, specifically that they failed to allow him to shower to remove the Permethrin (an over the counter anti-louse medication/insecticide) that Criss prescribed, and that the failure to allow him to shower resulted in further injury. Plaintiff amended his Complaint again on January 17, 2017, and therein levies the same general complaints, while this time pleading sufficient facts and law to not be subject to a Motion to Dismiss. [Doc. 77].

3. In his Initial Disclosures, Plaintiff produced a copy of the "Inmate Handbook" he received while incarcerated at St. Louis County Jail. See Plaintiff's Initial Disclosures, attached hereto as <u>Exhibit A</u>, and incorporated herein by this reference.

4.     The Inmate Handbook outlines the grievance procedure at St. Louis County Jail, stating that, after exhausting the informal process, that the formal process for grievance filing as it relates to prison conditions is as follows (Ex. A, WATSON_12-13):

   a. Request an Inmate Grievance form from your Housing Unit Office and/or Unit Case Manager.

   b. Complete the grievance form, outlining the reason for the grievance and include the rule, regulation, policy, or circumstance.

   c. A grievance must be filed within five (5) days from the date of the incident or event that is the basis for the grievance, unless circumstances make it unreasonable to file within that time.

   d. Relate specific details in the grievance such as the date, time, and location of the incident, any witnesses and any and all related information.

   e. Include all actions you took to solve the problem and what staff members you contacted or talked to regarding your problem, concern, or complaint.

   f. The grievance must include the date it is being filed along with your name and signature, your inmate number, and housing unit.

   g. Submit the grievance to your Unit Case Manager or Housing Unite Supervisor.

   h. A written response to your grievance will be received within five (5)

3

    working days of the time it was received, unless review of your grievance requires additional time. You will be advised if the response will take more than 5 days.

  i. Grievances must be filed by each individual; group grievances are unacceptable.

  j. Grievances that are determined to be of a frivolous nature shall receive a response in writing to that effect.

  k. Disciplinary sanctions administered to you by an office are not relivable issues as long as they are within departmental guidelines.

5. Should a grievance be denied and should an inmate wish to appeal the denial of this grievance, the Inmate Handbook also provides an appeal procedure (Ex. A, p. WATSON_13):

  a. The appeal should be submitted to the Unit Caseworker and/or the Housing Unit Supervisor within three (3) working days to be forwarded to the Division Superintendent.

  b. The appeal investigation should be conducted within five (5) working days of the Division Superintendent receiving your appeal.

  c. In the event the time limit to respond to the appeal is insufficient due to extenuating circumstances, you will be notified in writing. There is only one level of appeal.

6. On September 8, 2014, Plaintiff saw Nurse Criss regarding his kidney stones. While he was being seen for this issue, he also reported that he was having

4

a scattered rash which began before his incarceration, which began on August 30, 2014. Nurse Criss prescribed cortisone cream. See Co-Defendant's Disclosures, attached hereto as <u>Exhibit B</u>, and incorporated herein by this reference, Bates 26-27.

7. Plaintiff then requested care, specifically for his skin, on September 16, 2014. He was seen by Shatia J. Reece, LPN, who saw him at sick call. A follow up appointment was scheduled and Nurse Reece offered Ibuprofen for Plaintiff's additional complaint of headaches and earaches, but Plaintiff refused this medication. <u>Ex. B</u>, Bates 24.

8. Plaintiff made a sick call request on September 21, 2014. Alonna Harris, RN, reported that Plaintiff complained of a rash that began once he was moved to the 8th floor housing unit. She reported that Plaintiff had recently seen an MD, that Plaintiff's Benadryl prescription had ended, but that he was recently given hydrocortisone cream. <u>Ex. B</u>, Bates 23.

9. The same date, September 21, 2014, Plaintiff was seen again by Dr. Fred Rottnek, MD. Dr. Rottnek started Plaintiff on Vitamin A&D ointment for thirty days, starting September 21, 2014. <u>Ex. B</u>, Bates 22.

10. On September 28, 2014, Plaintiff saw Vicki Reynolds, RN, regarding the same complaints about his rash. She referred him to the clinic, as this interaction appeared to be at sick call. <u>Ex. B</u>, Bates 21.

11. Plaintiff then saw Tonia Dalcour, LPN, on September 29, 2014, who evaluated Plaintiff's rash and set him for an appointment with the next level of

care. Benadryl was prescribed. Ex. B, Bates 20.

12. On September 30, 2014, Plaintiff had his first interaction with Nurse Practitioner Erica Criss as it relates to his rash. Nurse Criss diagnosed Plaintiff with scabies and ordered daily hydrocortisone, Permethrin, and Diphenhydramine (generic for Benadryl). She ordered that the Permethrin was to be massaged "into skin from head to feet, leave on x8-14h, wash off, repeat in 14 days if live mites still present; pruritus [itching] may persist after." Ex. B, Bates 18-19.

13. Plaintiff claims in his Third Amended Complaint he saw Criss on September 20, 2014, but then that it took eleven days to receive his Permethrin. [Doc. 77, p. 12, ¶89; p. 13, ¶ 91]. This allegation is not supported by relevant medical records, outlined above.

14. Plaintiff prepared his only grievance relevant to this suit on October 2, 2014. However, he states that it was not given to Mrs. Hale until October 7, 2014, which is over five days after the interaction with Criss and the receipt of the Permethrin, per the medical records. The grievance states that he was on medical lockdown for treatment for his rash, and that the treatment needed to be left on his skin for ten hours. The grievance states that after putting on the solution for his rash that he was supposed to rinse the solution off his skin. Plaintiff claimed that Correctional Officer Moore told him he could not come off lockdown until the following day. Moore supposedly confirmed this with the Nurse on Duty, who remains unidentified. The unnamed Nurse later came to his cell and stated the ointment was to be left on for 8-12 hours, and then washed off. Despite receiving

6

this information, when the time came to rinse off the ointment, Plaintiff claims he was not allowed to shower. He claims he was repeatedly denied a shower and was not able to wash off the solution until five hours after he was supposed to. He claims he had an allergic reaction from failing to promptly wash off the Permethrin. Ex. B, Bates 89-92. Nurse Criss is not named or referenced and no reference to a Nurse Practitioner is made.

15. The grievance officer determined that the majority of Plaintiff's claims in this story were false. The grievance officer claimed that Officer Moore told Plaintiff he could shower in the evening, but that Plaintiff attempted to go to the shower without a uniform, face towel, or soap. Plaintiff grew angry that after Officer Moore went to get these supplies for Plaintiff, that Plaintiff received an appropriate size uniform for his body rather than the XXXL size he preferred. Moore then stated Plaintiff chose not to take a shower, even after the items were retrieved. It does not appear that this grievance was appealed. Ex. B, Bates 93, 95.

16. Plaintiff claims in his Third Amended Complaint that "On or about September 23, 2014, Plaintiff also filed an institutional grievance and gave it to Lieutenant Morgan." [Doc. 77, p 3, ¶ 14]. The alleged grievance is not attached.

## Applicable Law

The summary judgment standard is well established in Federal Law. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a

7

matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is met, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The non-moving party "may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists." *Herring v. Canada Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

The Prison Litigation Reform Act ("PLRA") requires that a prisoner fully exhaust all available administrative remedies prior to bringing suit. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. Dismissal is required under section

8

1997e(a) if an inmate has failed to exhaust all available administrative remedies prior to filing suit. *Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003).

Exhaustion of all administrative remedies means that a prisoner must use all steps that the correctional facility requires and must follow such steps properly. *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). A prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Id*. The PLRA exhaustion requirement applies to cases requesting any type of relief, including money damages, even if money damages were not available through the prison's administrative process. *Foulk v. Charrier*, 262 F.3d 687, 695-96 (8th Cir. 2001)

**Argument**

Plaintiff failed to grieve any issue as it related to the care received from Nurse Erica Criss. His only grievance focused solely on the alleged failure of correctional officers to timely provide him a shower rather than any medical failings on the part of Erica Criss.

Plaintiff cannot properly exhaust his administrative remedies without following the grievance procedure in place and placing the facility on notice of his complaints. The only relevant grievance, dated October 2, 2014, references only conduct by Correctional Officers and an unidentified night nurse who, together, prevented him from showering and remove the Permethrin from his body. Pursuant to the facility's rules, Plaintiff was required to relate specific details of the incident,

9

including individuals involved and well as the staff members he contacted regarding his issues. *Supra*, Statement of Facts, at 4, 5. Plaintiff did not mention, reference, describe, or address Erica Criss. *Supra*, S.O.F., at 14 The night nurse remains unidentified, but is not identified as a Nurse Practitioner or any party with whom Plaintiff had any previous interaction. It is highly unlikely this party is Erica Criss. This grievance, to the extent that it attempts to grieve any conduct by Erica Criss, fails to meet the standards required by the inmate handbook. By failing to comply with the relevant grievance procedure, Plaintiff has failed to exhaust his administrative remedies as they relate to Erica Criss.

Plaintiff, in his Third Amended Complaint, claims that he filed a grievance on September 23, 2014, presumably related to his claim that he did not receive the Permethrin until October 1, 2014, after allegedly having it prescribed to him on September 20, 2014. *Supra*, S.O.F., at 16. This cannot be the true, or if it is there is no way this grievance could be directed against Nurse Criss. Pursuant to applicable medical records, he was not prescribed Permethrin until September 30, 2014. *Supra*, S.O.F., at 12. Additionally, Nurse Criss saw him first on September 8, 2014, and if the grievance was meant to be directed to this visit, it is far out of time. *Supra*, S.O.F., at 6. If this grievance was ever filed, which appears unlikely as it does not appear in the institutional file and the timeline does not fit the care received, there is no way it could possibly be directed to Nurse Criss, as it was either far too late to comply with the applicable rules, or was filed before the

10

appointment where Permethrin was prescribed. Either this grievance did not exist, or it was directed to another individual, other than Nurse Criss.

Plaintiff cannot exhaust his administrative remedies without timely filing a grievance which conforms to the applicable guidelines and complains of the problem he eventually sues for. Here, Plaintiff may have exhausted his administrative remedies as it relates to some of the Co-Defendants, but he has completely and totally failed to grieve that Defendant Criss violated any of his constitutional rights. Without fully complying with the grievance procedure in St. Louis County as set out in his Inmate Manual, and without directly grieving his issues with Nurse Criss, Plaintiff cannot exhaust his administrative remedies. Plaintiff, here, has failed to do so and his claims against Nurse Criss should be dismissed.

## Conclusion

Plaintiff filed one grievance in this matter, which failed to address, identify, or describe Nurse Criss. Plaintiff cannot maintain this suit without exhausting his administrative remedies. His failure to fully and completely grieve the conduct by Nurse Criss that allegedly infringed upon his Constitutional rights is fatal to his claim and summary judgment should be granted.

WHEREFORE Defendant Erica Criss respectfully requests that this Court enter an Order dismissing her from this action for Plaintiff's failure to exhaust his administrative remedies; that summary judgment be entered in her favor; and for such other and further relief that this Court deems meet and just in the circumstances.

WIEDNER & McAULIFFE, LTD.

By:  /s/ *Alexander B. Chosid*
C. Zachary Vaughn, #MO56408
Alexander B. Chosid, #MO64780
8000 Maryland Ave., Suite 550
St. Louis, Missouri 63105
(314) 721-3400 – telephone
(314) 725-5755 – fax
czvaughn@wmlaw.com
abchosid@wmlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was sent via this Court's electronic filing system, this 27th day of January, 2016 to:

Talmage E. Newton IV
Reno R. Cova, III
NEWTON BARTH, L.L.P.
7515 Delmar Blvd.
St. Louis, MO 63130
tnewton@newtonbarth.com
rcova@newtonbarth.com
*Attorneys for Plaintiff*

Lorena V. Merklin von Kaenel
Assistant County Counselor
Office of the County Counselor
County Government Center
41 South Central, 9th Floor
Clayton, MO 63105
Lmerklinvonkaenel@stlouisco.com
*Attorney for Defendants Moore and Hayden*

  /s/ *Alexander B. Chosid*